UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | |
|---|---|
| BETH C. SCHRAM, *et al.*, ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | CAUSE NO. 1:15-cv-00131-SLC |
| ) | |
| FIDELITY NATIONAL TITLE INSURANCE ) | |
| COMPANY, *successor by merger to* ) | |
| Lawyers Title Insurance Corporation, ) | |
| ) | |
| Defendant. ) | |

## OPINION AND ORDER

Plaintiffs Beth C. Schram and P.T. Schram (together, "the Schrams") filed this suit against Defendant Fidelity National Title Insurance Company, successor by merger to Lawyers Title Insurance Corporation ("FNTIC"), concerning a title insurance policy issued to the Schrams by Lawyers Title Insurance Corporation ("Lawyers Title").[1] (DE 38). The Schrams assert that FNTIC had a duty to defend them in a suit filed by their neighbor, who asserted the existence of an easement on the Schrams' land. The Schrams seek a declaratory judgment concerning FNTIC's duty to defend and advance claims for breach of contract and breach of the duty of good faith and fair dealing against FNTIC.

Now before the Court are the parties' cross motions for partial summary judgment (DE 54; DE 68), each seeking judgment as a matter of law on the Schrams' claims for breach of

---

[1] Diversity jurisdiction exists under 28 U.S.C. § 1332(a). Jurisdiction of the undersigned Magistrate Judge is based on 28 U.S.C. § 636(c), all parties consenting. (DE 16; DE 48).
  The Schrams initially sued "Fidelity National Title Company LLC formerly known as Lawyers Title Insurance Corporation" ("Fidelity LLC") and later amended their complaint to add FNTIC as a Defendant when Fidelity LLC claimed it was the wrong defendant. (DE 3; DE 38). Fidelity LLC was dismissed from this suit pursuant to the Court's Order dated May 10, 2016. (DE 53).

contract and declaratory judgment. The motions are ripe for ruling.[2] (DE 55; DE 65; DE 69; DE 70; DE 71; DE 72; DE 76). For the following reasons, the Schrams' motion for partial summary judgment will be GRANTED, and FNTIC's motion for partial summary judgment will be DENIED.

## I. FACTUAL AND PROCEDURAL BACKGROUND

### A. *The Policy*

On or about May 2, 2007, the Schrams obtained a policy of title insurance, No. 700702177 (the "Policy"), from Lawyers Title for certain real property owned by the Schrams in Churubusco, Indiana. (DE 55-1 at 4-11; DE 70-1 at 29-36). The parties do not dispute that FNTIC is the successor in interest to Lawyers Title for purposes of the Policy and this suit.

The Policy generally indemnifies against losses sustained by reason of defects in title. (DE 55 at 9). Specifically, the Policy states, in relevant part:

> SUBJECT TO THE EXCLUSIONS FROM COVERAGE, THE EXCEPTIONS FROM COVERAGE CONTAINED IN SCHEDULE B AND THE CONDITIONS AND STIPULATIONS, LAWYERS TITLE INSURANCE CORPORATION, a Virginia corporation, herein called the Company, insures, as of the Date of Policy shown in Schedule A, against loss or damage, not exceeding the Amount of Insurance stated in Schedule A, sustained or incurred by the insured by reason of:
>
> 1. Title to the estate or interest described in Schedule A being vested other than as stated therein;
> 2. Any defect in or lien or encumbrance on the title;
> 3. Unmarketability of the title;
> 4. Lack of a right of access to and from the land.
>
> The Company will also pay the costs, attorneys' fees and expenses incurred in defense of the title, as insured, but only to the extent provided in the Conditions and Stipulations.

---

[2] The Schrams did not file a reply brief to their motion for partial summary judgment, and their time to do so has now passed.

2

(DE 55-1 at 5; DE 70-1 at 30).

With respect to the "Exclusions from Coverage" portion of the Policy, that section reads, in relevant part:

> The following matters are expressly excluded from the coverage of this policy and the Company will not pay loss or damage, costs, attorneys' fees or expenses which arise by reason of:
>
> . . . .
>
> 3. Defects, liens, encumbrances, adverse claims or other matters:
>    (a) created, suffered, assumed or agreed to by the insured claimant;
>    (b) not known to the Company, not recorded in the public records at Date of Policy, but known to the insured claimant and not disclosed in writing to the Company by the insured claimant prior to the date the insured claimant became an insured under this policy;
>    (c) resulting in no loss or damage to the insured claimant;
>    (d) attaching or created subsequent to Date of Policy; or
>    (e) resulting in loss or damage which would not have been sustained if the insured claimant had paid value for the estate or interest insured by this policy.

(DE 55-1 at 5; DE 70-1 at 30).

Additionally, the "Schedule B Exceptions from Coverage" portion of the Policy identifies 19 exceptions from coverage. Relevant to this dispute is Exception No. 2, "Easements or claims of easements not shown by the public records[,]" and Exception No. 4:

> Defects, liens, encumbrances, adverse claims or other matters, if any, created, first appearing in the public records or attaching subsequent to the effective date hereof but prior to the date the Proposed Insured acquires for the value of record the estate or interest or mortgage thereon covered by this Commitment.

(DE 55-1 at 7; DE 70-1 at 32).

Finally, Section 4(a) of the "Conditions and Stipulations" portion of the Policy, entitled "Defense and Prosecution of Actions; Duty of Insured Claimant to Cooperate," reads as follows:

3

> Upon written request by the insured . . . , the Company, at its own cost and without unreasonable delay, shall provide for the defense of an insured in litigation in which any third party asserts a claim adverse to the title or interest as insured, but only as to those stated causes of action alleging a defect, lien or encumbrance or other matter insured against by this policy . . . . The Company will not pay any fees, costs or expenses incurred by the insured in the defense of those causes of action which allege matters not insured against by this policy.

(DE 55-1 at 10; DE 70-1 at 35).

### B. Dafforn Files Suit Against the Schrams

On November 7, 2012, the Schrams' neighbor, non-party Donald W. Dafforn, filed a complaint against the Schrams in Whitley Circuit Court, Cause No. 92C01-1211-PL-661 (the "Dafforn Complaint"), alleging that he had legal access over the Schrams' real property located at 8620 East 300 North, Churubusco, Indiana (the "Real Property") by way of an easement. (DE 55-1 at 12-24; DE 70-1 at 2-13). Dafforn's farmland is located at 8700 East 300 North, adjacent to the Real Property; the farmland does not have direct access to 300 North. (DE 55-1 at 83-84). Dafforn sought declaratory relief and an injunction for interference with an easement and also advanced a claim for trespass on the easement. (DE 55-1 at 12-24; DE 70-1 at 2-13).

In his complaint, Dafforn alleged that the chain of title to the Real Property created a valid easement or right of way for him over the western 30 feet of the Real Property. (DE 55-1 at 12-22; DE 70-1 at 2-13). Dafforn described the chain of title to the Real Property as follows: Timothy L. Frazier—from whom Dafforn bought his farmland in 1994—conveyed the Real Property to Roger and Sharon Schnitzer (together, "the Schnitzers") by deed ("the Schnitzers' deed") on February 28, 1996, and provided for "an access easement over the western 30 feet thereof." (DE 55-1 at 14 ¶¶ 5-6; DE 70-1 at 3 ¶¶ 5-6). The Schnitzers then conveyed the Real Property to John and Jeadene Teusch ("the Teuschs") by deed on August 19, 1997, subject to the easement. (DE 55-1 at 14 ¶ 7; DE 70-1 at 3 ¶ 7). The Teuschs then conveyed the Real Property

4

to Mark and Kimberly Ashcroft ("the Ashcrofts") on July 13, 2005, subject to the easement. (DE 55-1 at 14 ¶ 3; DE 70-1 at 3 ¶ 3). And the Ashcrofts then conveyed the Real Property to the Schrams on May 2, 2007, subject to "all easements, agreements and restrictions of record and all public right of ways." (DE 55-1 at 14 ¶¶ 9-10; DE 70-1 at 3 ¶¶ 9-10).

Although the Dafforn Complaint indicated that a copy of the Schnitzers' deed providing for the access easement was "attached hereto as Exhibit A, and incorporated herein by reference," apparently it was inadvertently omitted from the Dafforn Complaint when filed. (DE 55-1 at 12-24, 68, 70; DE 70-1 at 2-13).

*C. FNTIC Denies Coverage for the Dafforn Suit*

On November 16, 2012, the Schrams sent an email to FNTIC, notifying it of the Dafforn Complaint and making a claim under the Policy. (DE 55-1 at 26; DE 70-1 at 28). FNTIC responded to the Schrams with a claims acknowledgment letter on November 21, 2012. (DE 55-1 at 28). On November 27, 2012, FNTIC requested additional documents from the Schrams to investigate their claim. (DE 55-1 at 28). On December 3, 2012, FNTIC received additional information from the Schrams in response to its supplemental requests, including a copy of the Dafforn Complaint and copies of past surveys of the Real Property. (DE 55-1 at 30-66).

On December 14, 2012, FNTIC asked the Schrams about the Schnitzers' deed that was referenced as Exhibit A to the Dafforn Complaint but was not attached. (DE 55-1 at 68). The Schrams replied to FNTIC on December 17, 2012, stating that they had forwarded the entire Dafforn Complaint and that Dafforn's attorney had apparently failed to attach the correct Exhibit A when filing the document. (DE 55-1 at 70).

FNTIC conducted its review of the disputed facts underlying the Dafforn Complaint based on the Schrams' notice of claim, the Schrams' supplemental responses, and its own "record searches, including the chain of title deeds." (DE 55-1 at 74 ¶¶ 12, 13). On December

5

19, 2012, FNTIC sent the Schrams a letter denying their claim under the Policy, citing an exclusion for "Easements or claims of easements not shown by the Public Records." (DE 55-1 at 77-78; DE 70-1 at 38). FNTIC further informed the Schrams that they had 30 days to submit any additional information that may affect the coverage decision, and that if it did not hear from them within that time, the claim file would be closed. (DE 55-1 at 78; DE 70-1 at 38). FNTIC did not receive any additional communication from the Schrams, and it subsequently closed their claim file. (DE 55-1 at 75 ¶ 16).

### D. *The Schrams Hire Their Own Counsel to Defend Them in the Dafforn Suit*

After FNTIC denied their claim, the Schrams hired their own counsel to defend them in the Dafforn suit. (DE 70-1 at 42). On January 13, 2013, Dafforn amended his complaint (the "Dafforn Amended Complaint") to correctly attach the Schnitzers' deed that was inadvertently omitted from his original complaint. (DE 70-1 at 15-26). The legal description of the Real Property attached to the Schnitzers' deed reads, in relevant part: "a distance of 420.0 feet to the point of beginning, containing 2.370 acres of land, more or less, subject to a legal right-of-way for County Road 300N *and subject to an access easement over the West 30 feet thereof*." (DE 70-1 at 22 (emphasis added)).

On August 14, 2014, the Schrams moved for summary judgment in the Dafforn suit, arguing that the Real Property was not encumbered by the purported easement. (DE 70-1 at 46-62). The Whitley Circuit Court denied the motion on February 27, 2015, finding that there were contested issues of material fact that precluded summary judgment. (DE 55-1 at 91-92; DE 70-1 at 64-65).

*E. The Schrams File the Instant Suit Against FNTIC*

On April 14, 2015, the Schrams filed the instant suit in Allen Circuit Court against Fidelity LLC, and the action was subsequently removed here based on diversity jurisdiction. (DE 1; DE 3; DE 5; DE 6). On December 14, 2015, the Schrams amended their complaint to add FNTIC as a Defendant, and Fidelity LLC was later dismissed from this action as, in essence, an improperly-named defendant.[3] (DE 31; DE 32; DE 38; DE 39).

In the amended complaint, the Schrams seek a declaratory judgment that FNTIC had a duty to defend them in the Dafforn suit and they also advance claims for breach of contract and breach of the duty of good faith and fair dealing. (DE 38). Together with declaratory relief, the Schrams seek to recover compensatory damages (including the $34,335.31 they incurred in their defense of the Dafforn suit), treble damages, and punitive damages, as well as attorneys' fees, costs, and expenses. (DE 38 at 7-8; DE 70-1 at 75, 82).

*F. The Dafforn Suit Is Settled and Dismissed*

Mediation of the underlying Dafforn suit and the instant suit was jointly conducted on December 16, 2015. (DE 55-1 at 75 ¶ 17; DE 76 at 4). FNTIC agreed to a settlement for a nuisance value between Dafforn and FNTIC, identifying the Schrams as third party beneficiaries of the settlement. (DE 55-1 at 75 ¶ 17; DE 55-1 at 81). In connection with the settlement, Dafforn executed an affidavit on December 31, 2015, acknowledging that his easement claim was not based on an express grant or a recorded easement. (DE 55-1 at 83-86). On January 26, 2016, Dafforn moved to dismiss his suit against the Schrams. (DE 55-1 at 93). However,

---

[3] Because the amended complaint filed on December 14, 2015, was unsigned and lacked exhibits (DE 32), the Court granted the Schrams leave to file a corrected version (DE 39), which they did on January 12, 2016 (DE 38). Summons were issued to FNTIC on January 13, 2016, and service of process followed. (DE 40).

7

because the Schrams also needed to approve the dismissal, the action was not actually dismissed until April 15, 2016. (DE 55-1 at 93).

## II. STANDARD OF REVIEW

Summary judgment may be granted only if there are no disputed genuine issues of material fact. *Payne v. Pauley*, 337 F.3d 767, 770 (7th Cir. 2003). When ruling on a motion for summary judgment, a court "may not make credibility determinations, weigh the evidence, or decide which inferences to draw from the facts; these are jobs for a factfinder." *Id.* (citations omitted). The only task in ruling on a motion for summary judgment is "to decide, based on the evidence of record, whether there is any material dispute of fact that requires a trial." *Waldridge v. Am. Hoechst Corp.*, 24 F.3d 918, 920 (7th Cir. 1994) (citations omitted). If the evidence is such that a reasonable factfinder could return a verdict in favor of the nonmoving party, summary judgment may not be granted. *Payne*, 337 F.3d at 770.

A court must construe the record in the light most favorable to the nonmoving party and avoid "the temptation to decide which party's version of the facts is more likely true[,]" as "summary judgment cannot be used to resolve swearing contests between litigants." *Id.* (citations omitted). However, "a party opposing summary judgment may not rest on the pleadings, but must affirmatively demonstrate that there is a genuine issue of material fact for trial." *Id.* at 771 (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986)).

"When, as here, cross-motions for summary judgment are filed, we look to the burden of proof that each party would bear on an issue of trial; we then require that party to go beyond the pleadings and affirmatively to establish a genuine issue of material fact." *Diaz v. Prudential Ins. Co. of Am.*, 499 F.3d 640, 643 (7th Cir. 2007) (quoting *Santaella v. Metro. Life Ins. Co.*, 123

F.3d 456, 461 (7th Cir. 1997)); *see also M.O. v. Ind. Dep't of Educ.*, 635 F. Supp. 2d 847, 850 (N.D. Ind. 2009). "The contention of one party that there are no issues of material fact sufficient to prevent the entry of judgment in its favor does not bar that party from asserting that there are issues of material fact sufficient to prevent the entry of judgment as a matter of law against it." *M.O.*, 635 F. Supp. 2d at 850 (citation omitted); *see Zook v. Brown*, 748 F.2d 1161, 1166 (7th Cir. 1984). That is, cross-motions for summary judgment do not alter each party's burdens in the summary judgment analysis; each responsive party must establish a triable issue of fact to defeat the moving party's cross-motion for summary judgment. *See McKinney v. Cadleway Props., Inc.*, 548 F.3d 496, 504 n.4 (7th Cir. 2008) (citation omitted); *M.O.*, 635 F. Supp. 2d at 850. The cross-motions are treated separately. *See McKinney*, 548 F.3d at 504 (citation omitted).

## III. DISCUSSION

In a diversity case, the court applies federal procedural law and state substantive law. *See Nat'l Am. Ins. Co. v. Artisan & Truckers Cas. Co.*, 796 F.3d 717, 723 (7th Cir. 2015) (citation omitted). "Questions of insurance-policy interpretation are substantive." *Id.* (citation omitted). Therefore, the Court's interpretation of the Policy must be according to state law. *See id.* Both parties cite to Indiana law in their briefs (DE 55; DE 69), and as such, they do not dispute that Indiana law applies to the interpretation of the Policy.

### A. Indiana Law Regarding Interpretation of an Insurance Policy

"In Indiana, the meaning of an insurance policy is a matter of law, and in general the same rules of construction apply to insurance policies as to other contracts." *Home Fed. Sav. Bank v. Ticor Title Ins. Co.*, 695 F.3d 725, 729 (7th Cir. 2012) (citing *Commercial Union Ins. v. Moore*, 663 N.E.2d 179, 180 (Ind. Ct. App. 1996)); *see also Walton v. First Am. Title Ins. Co.*,

9

844 N.E.2d 143, 146 (Ind. Ct. App. 2006). "Unless the insurance contract is ambiguous, the court should give to its terms their plain and ordinary meaning." *Ticor Title Ins. Co. of Cal. v. FFCA/IIP 1988 Prop. Co.*, 898 F. Supp. 633, 638 (N.D. Ind. 1995) (citing *Tate v. Secura Ins.*, 587 N.E.2d 665, 668 (Ind. 1992); *Standard Mut. Ins. Co. v. Pleasants*, 627 N.E.2d 1327, 1329 (Ind. Ct. App. 1994)). "Any ambiguity in the policy will be construed strictly against the insurer, particularly where the scope of a coverage exclusion is at issue." *Home Fed. Sav. Bank*, 695 F.3d at 729 (citing *State Auto. Mut. Ins. Co. v. Flexdar, Inc.*, 964 N.E.2d 845, 848 (Ind. 2012)); *see also Walton*, 844 N.E.2d at 146. "[T]he insurer bears the burden of showing that an exclusion applies." *Home Fed. Sav. Bank*, 695 F.3d at 732 (citing *Hoosier Ins. Co. v. Audiology Found. of Am.*, 745 N.E.2d 300, 309 (Ind. Ct. App. 2001)).

"Under Indiana law, an insurer's duty to defend its insured against suit is broader than its coverage liability or duty to indemnify." *Ticor Title Ins. Co. of Cal.*, 898 F. Supp. at 638 (citations omitted); *see also Walton*, 844 N.E.2d at 146 (citation omitted). "[T]he insurer's duty to defend is determined from the allegations of the complaint and from those facts known to or ascertainable by the insurer after reasonable investigation." *Ticor Title Ins. Co. of Cal.*, 898 F. Supp. at 638 (citation omitted); *see also Walton*, 844 N.E.2d at 147 (citation omitted). "It is the nature of the claim, not its merit, which establishes the insurer's duty to defend." *Home Fed. Sav. Bank*, 695 F.3d at 731 (quoting *Terre Haute First Nat'l Bank v. Pacific Emp'rs Ins. Co.*, 634 N.E.2d 1336, 1339 (Ind. Ct. App. 1993)); *accord Am. Family Mut. Ins. Co. v. Williams*, 832 F.3d 645, 652 (7th Cir. 2016).

Having said that, "when the underlying factual basis of the complaint, even if proved true, would not result in liability under the insurance policy, the insurance company can properly

refuse to defend." *Ticor Title Ins. Co. of Cal.*, 898 F. Supp. at 638 (citation omitted). That is, "[i]f the pleadings reveal that a claim is clearly excluded under the policy, then no defense is required." *Walton*, 844 N.E.2d at 146 (citing *Liberty Mut. Ins. Co. v. OSI Indus., Inc.*, 831 N.E.2d 192, 198 (Ind. Ct. App. 2005)). "The law in [Indiana] is well settled that where an insurer's independent investigation of the facts underlying a complaint against its insured reveals a claim patently outside of the risks covered by the policy, the insurer may properly refuse to defend." *Id.* (citing *Liberty Mut. Ins. Co. v. Metzler*, 586 N.E.2d 897, 901 (Ind. Ct. App. 1992)).

"[A]n insurer refusing to defend must protect its interest by either filing a declaratory judgment action for a judicial determination of its obligations under the policy or hire independent counsel and defend its insured under a reservation of rights." *Id.* (citing *Metzler*, 586 N.E.2d at 902). Having said that, "an insurer can refuse to defend or [to] clarify its obligation by means of a declaratory judgment action. If it refuses to defend it does so at its peril . . . ." *Id.* (internal alteration notation and citation omitted).

### B. Summary Judgment Will Be Granted in the Schrams' Favor on Their Breach of Contract Claim

FNTIC argues that the Schrams' breach of contract claim fails because the Dafforn Complaint did not allege a covered risk to trigger a duty to defend under the Policy. FNTIC urges that it properly denied the Schrams' claim under the Policy based on the nature of the claim after FNTIC's reasonable investigation into the facts underlying the Dafforn Complaint. Accordingly, FNTIC asserts that summary judgment should be granted in its favor on the Schrams' breach of contract claim.

In response, the Schrams argue that summary judgment should be entered in their favor on the breach of contract claim because the Policy unquestionably provides coverage for

11

easements as a defect in the title in which someone else claims an interest, and because the Dafforn Complaint did not fall within any stated Policy exclusion. As such, the Schrams urge that FNTIC breached its duty to defend them under the Policy against the Dafforn Complaint, and that they are entitled to judgment as a matter of law on their breach of contract claim.

FNTIC produces the Affidavit of Roland Kaiser, FNTIC's senior claims counsel, who describes the investigation that FNTIC undertook in response to the Dafforn Complaint. (DE 55-1 at 72-75). Kaiser attests that as part of its investigation, FNTIC requested additional information from the Schrams. (DE 55-1 at 73 ¶¶ 7, 8). The Schrams provided the requested supplemental documents, including the Dafforn Complaint, the Schrams' demand to Dafforn, and historical surveys. (DE 55-1 at 73 ¶ 9). FNTIC then asked the Schrams about the missing Exhibit A (the Schnitzers' deed) to the Dafforn Complaint (DE 55-1 at 74 ¶ 10), and FNTIC considered the Schrams' reply that they believed Dafforn's attorney had mistakenly attached an incorrect exhibit to the complaint (DE 55-1 at 70). FNTIC continued its review and investigation into the disputed facts underlying the Dafforn Complaint, including performing "record searches, including the chain of title deeds." (DE 55-1 at 74 ¶ 12). Ultimately, however, FNTIC concluded that the Dafforn Complaint fell within the Policy's coverage exception for "Easements or claims of easements not shown by the public records," and thus, it denied coverage. (DE 55-1 at 74 ¶ 14).

FNTIC urges that it is entitled to judgment as a matter of law because no reasonable factfinder could dispute that it undertook and completed a reasonable investigation into the facts underlying the Dafforn Complaint, or dispute its conclusion that no easement existed on the Real Property in favor of Dafforn. FNTIC emphasizes that the Dafforn Complaint did not identify a

recorded easement, that the Schrams disputed the existence of the easement, and that "repeat searches and review of the chain of title did not identify a recorded easement benefitting Dafforn and burdening [the] Schrams['] land." (DE 55 at 12). FNTIC continues that "no other deed in the chain of title creates an easement benefitting Dafforn" and that "[o]ff record easements were expressly excepted from coverage." (DE 55 at 13-14). As such, FNTIC asserts that Dafforn Complaint pled a claim that was "clearly excluded" under the policy, *Walton*, 844 N.E.2d at 146, and FNTIC had no duty to defend it.

FNTIC, however, never confronts and discusses pivotal evidence in this dispute—the Schnitzers' deed that is in the Real Property's chain of title. FNTIC's silence in that respect creates a glaring omission, which is fatal to its motion for summary judgment. Succinctly stated, how could FNTIC's investigation into the chain of title of the Real Property be reasonable if it failed to ascertain that the legal description attached to the Schnitzers' deed, which was recorded in the public records (DE 70-1 at 21-22), describes an easement? To reiterate, "the insurer's duty to defend is determined from the allegations of the complaint *and from those facts known to or ascertainable by the insurer after reasonable investigation*." *Ticor Title Ins. Co. of Cal.*, 898 F. Supp. at 638 (emphasis added) (citation omitted).

It is clear from the face of the Dafforn Complaint that Dafforn intended to attach and incorporate by reference a copy of the Schnitzers' deed, even though he failed to actually attach the correct exhibit at the time of filing. (DE 55-1 at 14 ¶ 6; DE 70-1 at 3 ¶ 6). As alleged in the Dafforn Complaint, the Schnitzers' deed has an attached legal description that describes an access easement over the western 30 feet of the Real Property. (DE 70-1 at 22 ("containing 2.370 acres of land, more or less, subject to a legal right-of-way for County Road 300N *and*

13

*subject to an access easement over the West 30 feet thereof*" (emphasis added))). FNTIC does not dispute that the Real Property was thereafter conveyed from the Schnitzers to the Teuschs, from the Teuschs to the Ashcrofts, and from the Ashcrofts to the Schrams, and that these conveyances were subject to all easements of record. Consequently, on this record there is only one reasonable conclusion—that FNTIC failed to conduct a reasonable investigation into the facts underlying the Dafforn Complaint as it failed to ascertain a material fact in the Real Property's chain of title. *See Trisler v. Ind. Ins. Co.*, 575 N.E.2d 1021, 1025 (Ind. Ct. App. 1991) ("The insurer must undertake a reasonable investigation to determine whether a factual basis exists which would bring the claim within the coverage of the policy.").

Perhaps in an attempt to indirectly address the Schnitzers' deed, FNTIC argues that the Schrams cannot rely on the Dafforn Amended Complaint, which *did* correctly attach the Schnitzers' deed as Exhibit A. FNTIC emphasizes that the Dafforn Amended Complaint was not filed until *after* FNTIC had issued its denial letter, and that the Schrams never notified FNTIC of the Dafforn Amended Complaint. (DE 76 at 3). Thus, FNTIC claims it had no knowledge of the Dafforn Amended Complaint.

The Court does not find FNTIC's lack of knowledge concerning the Dafforn Amended Complaint, however, to be determinative with respect to its duty to defend. The primary difference between the Dafforn Complaint and the Dafforn Amended Complaint is that the latter actually attached the Schnitzers' deed as Exhibit A. Regardless of the omitted attachment, the Schnitzers' deed was clearly referenced in the Dafforn Complaint, was publicly recorded, and would have been revealed in a reasonable investigation into the Real Property's chain of title. *See generally Desjardins v. Fid. Nat'l Title Ins. Co.*, No. 12-cv-272-SM, 2013 WL 2949089, at

14

*4 (D.N.H. June 14, 2013) (explaining that the purpose of an insurer's standard exceptions "is to protect the insurance company from potential liability *that could not be foreseen by simply reviewing the public records*, like those maintained at the registry of deeds" (emphasis added)). Consequently, that the Dafforn Complaint had an incorrect attachment when filed did not relieve FNTIC of its duty to reasonably investigate Dafforn's allegations, which would have revealed the Schnitzers' deed. *See House v. First Am. Title Co.*, 858 N.E.2d 640, 643 (Ind. Ct. App. 2006) ("Generally, a provider of title insurance is required to search a property's chain of title in order to discover whether there exists any cloud upon the interest transferred." (citing *Bank of N.Y. v. Nally*, 820 N.E.2d 644, 650 (Ind. 2005))).

FNTIC next argues that "where there is not an easement, it is axiomatic that there can be no easement of record burdening the [Real Property]." (DE 76 at 7). It asserts that Dafforn and the Schrams did not, and could not, identify a recorded easement on the Real Property, and that a claim for defense of an unrecorded easement was expressly excluded from Policy coverage. (DE 76 at 7). In support, FNTIC points to the affidavit that Dafforn executed in conjunction with the settlement agreement that he entered into with FNTIC, in which he concedes that there was no public record of an express easement benefitting him and burdening the Schrams. (*See* DE 55-1 at 84 ¶¶ 10-11).

The Policy exclusion relied upon by FNTIC to deny the duty to defend, however, is not as narrowly written as FNTIC suggests. The exclusion reads: "Easements or *claims of* easements not *shown* by the public records." (DE 55-1 at 7 (emphasis added); DE 70-1 at 32 (emphasis added)). Construing that coverage exception strictly against FNTIC, the Dafforn Complaint, when coupled with a reasonable investigation into the Real Property's chain of title,

15

reveals a *claim* of an easement *shown* in the public record. *See Auto-Owners Ins. Co. v. Benko*, 964 N.E.2d 886, 890 (Ind. Ct. App. 2012) ("Where an ambiguity exists, that is, where reasonably intelligent people may interpret the policy's language differently, Indiana courts construe insurance policies strictly against the insurer." (citation omitted)).

While Dafforn's claim "might have been weak, even hopeless," that lack of merit could not absolve FNTIC of its duty to defend the Schrams against his claim of an easement shown in the public record. *Home Fed. Sav. Bank*, 695 F.3d at 731. "[An] insurance company has a contractual duty to defend unfounded, false and fraudulent suits based upon risks it has insured." *Id.* (quoting *Davidson v. Cincinnati Ins. Co.*, 572 N.E.2d 502, 505 (Ind. Ct. App. 1991)). An insurer is not entitled "to ignore relief the claimant actually seeks against its insured and to refuse to defend on the theory that the claimant cannot possibly prevail as a matter of law." *Id.* at 732.

An analogous case, *McFarland v. First American Title Insurance Co.*, 595 F. Supp. 630 (D. Mont. 1984), from the District of Montana is instructive. McFarland alleged that First American Title Insurance Co. ("First American") breached its duty to defend by failing to defend him in a suit filed by his neighbors claiming an easement on his land. *Id*. at 632. First American cited an exclusion in the insurance policy, such as the one at issue here, for easements or claims of easements "which are not shown by the public records." *Id*. at 633. McFarland claimed that the alleged easement was shown by two public records—a notice of appropriation and a ditch maintenance agreement. *Id*. The Court concluded that First American's duty to defend existed whether or not the neighbors' claim had merit and that the duty to defend arose at the point First American was notified of the claim of an easement on McFarland's property based on the

16

recorded notice of appropriation. *Id*. at 634. The court then granted summary judgment in McFarland's favor on the duty-to-defend issue, finding that First American had breached its duty to defend him when it failed to assume his defense after receiving notice that his neighbors claimed an easement based on the recorded notice of appropriation. *Id*. at 635.

To reiterate, "[c]overage exclusions are construed strictly against the insurer, and the insurer bears the burden of showing that an exclusion applies." *Home Fed. Sav. Bank*, 695 F.3d at 732 (citing *Hoosier Ins. Co.*, 745 N.E.2d at 309). Here, as in *McFarland*, the Court finds that FNTIC failed to carry its burden of showing that an exclusion applies. The Court concludes as a matter of law that FNTIC breached its duty to defend the Schrams when it failed to assume their defense after receiving notice of the Dafforn Complaint claiming an easement that was shown in the legal description to the Schnitzers' deed, which was publicly recorded in 1996 and is in the Real Property's chain of title. Therefore, summary judgment will be granted in the Schrams' favor on their breach of contract claim.

### C. Summary Judgment Will Also Be Granted to the Schrams on Their Declaratory Judgment Claim

For the reasons already discussed with respect to their breach of contract claim, the Schrams contend that a declaratory judgment should be entered in their favor concerning FNTIC's duty to defend them against the Dafforn Complaint. FNTIC argues, however, that the Schrams' claim for a declaratory judgment is moot because their claims against FNTIC were filed only *after* they had agreed to a dismissal of the Dafforn Complaint, and as such, "there is nothing to defend." (DE 55 at 15). As FNTIC sees it, there is no actual case or controversy concerning the duty to defend.

Under Article III of the United States Constitution, federal courts have jurisdiction over

live cases and controversies. *See Hollingsworth v. Perry*, 133 S. Ct. 2652, 2656 (2013) ("Article III demands that an 'actual controversy' persist throughout all stages of litigation." (citation omitted)). "A case becomes moot when the dispute between the parties no longer rages, or when one of the parties loses his personal interest in the outcome of the suit." *Holstein v. City of Chi.*, 29 F.3d 1145, 1147 (7th Cir. 1994) (citation omitted). "Once the defendant offers to satisfy the plaintiff's entire demand, there is no dispute over which to litigate and a plaintiff who refuses to acknowledge this loses outright, under Fed. R. Civ. P. 12(b)(1), because he has no remaining stake." *Id.* (citation omitted).

The Schrams acknowledge that the Dafforn suit has been dismissed, but emphasize that FNTIC's duty to defend them is still at issue in the form of its obligation to pay the Schrams' incurred defense costs. That is correct, as "[u]nder Indiana law, when an insurer denies coverage and refuses to defend its insured, it will be held liable for the costs of defense and settlement if it turns out to be wrong about its coverage obligations." *Aearo Corp. v. Am. Int'l Specialty Lines Ins. Co.*, 676 F. Supp. 2d 738, 752 (S.D. Ind. 2009) (citing *Frankenmuth Mut. Ins. Co. v. Williams*, 690 N.E.2d 675 (1997); *Emp'rs Ins. of Wausau v. Recticel Foam Corp.*, 716 N.E.2d 1015 (Ind. Ct. App. 1999)).

For example, in *Zurich Specialties London Ltd. v. Village of Bellwood*, the Northern District of Illinois found that the insurer's belated acknowledgment of its duty to defend the insured in the underlying case did not moot the insured's claims against it regarding the duty to defend, because the insured sought not only a declaration that the insurer had a duty to defend, but also a finding that the insurer had, in fact, *breached* this duty to defend. No. 07 CV 2171, 2011 WL 248444, at *9 (N.D. Ill. Jan. 26, 2011). Accordingly, the court rejected the insurer's

18

assertion that the insured's claim concerning the duty to defend was moot, and the court concluded that a justiciable controversy remained. *Id.*; *see also Fleishour v. Stewart Title Guar. Co.*, 743 F. Supp. 2d 1060, 1072 (E.D. Mo. 2010) (entering a declaratory judgment in the insured's favor on Count I that the insurer had a duty to defend the insured in the underlying suit, and entering a judgment on Count II that the insurer breached the contract by failing to assume the defense); *Aero Corp.*, 676 F. Supp. 2d at 744, 752 (granting summary judgment in plaintiff's favor on its action seeking a declaratory judgment on the duty to defend and advancing a breach of contract claim with respect to that duty to defend).

Here too, the Schrams seek not just a declaratory judgment that FNTIC had a duty to defend them against the Dafforn suit, but they also claim that FNTIC breached that duty to defend them and they therefore seek to recover their defense fees and costs incurred in the Dafforn suit. Consequently, the Schrams' claims concerning FNTIC's duty to defend are not moot and a justiciable controversy remains. For the reasons already explained, the Court finds as a matter of law that FNTIC had a duty to defend the Schrams in the Dafforn suit. Therefore, summary judgment will be GRANTED in the Schrams' favor on their claim seeking a declaratory judgment that FNTIC had a duty to defend them in the Dafforn suit.

*D. Damages*

The Schrams are entitled to an award of damages consisting of the costs and attorney's fees reasonably incurred representing their interests in the Dafforn suit. That sum should be easily calculated, and the Court will assume that the parties are capable of coming to an agreement on that issue. If, however, they are not able to agree on the sum to which the Schrams are entitled, the Court will schedule further briefing or a damages hearing once the Schrams'

19

remaining claim for breach of good faith and fair dealing has been resolved.

## IV. CONCLUSION

For the foregoing reasons, FNTIC's motion for partial summary judgment (DE 54) is DENIED, and the Schrams' cross motion for partial summary judgment (DE 68) is GRANTED as to their breach of contract and declaratory judgment claims. The Schrams' claim for breach of good faith and fair dealing, which was not a subject of the cross-motions for partial summary judgment, remains.

SO ORDERED.

Entered this 17th day of January 2017.

/s/ Susan Collins
Susan Collins,
United States Magistrate Judge